IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUIPMENT CORPORATION OF AMERICA, | )<br>)<br>) Civil Action No. 16-178 |
| Plaintiff, | ) Chief Judge Joy Flowers Conti/<br>) Chief Magistrate Judge Maureen P. Kelly |
| v. | )<br>) |
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) Re: ECF No. 13<br>)<br>) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

#### I. RECOMMENDATION

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint Under F.R.C.P. 12(b)(6) for Failure to State a Claim ("Motion to Dismiss"), filed by Defendant Hartford Underwriters Insurance Company ("Hartford"). ECF No. 13. It is respectfully recommended that the Motion to Dismiss be granted.

#### II. REPORT

##### A. FACTUAL AND PROCEDURAL BACKGROUND

###### 1. Factual Background

In the First Amended Complaint, Plaintiff Equipment Corporation of America ("ECA") makes the following allegations. ECA leased a rotary drill rig (the "Drill Rig") from Bauer Pileco, Inc. ("Bauer"). ECF No. 7 ¶ 4. On June 13, 2013, the Drill Rig rolled over and was damaged beyond repair while being operated by ECA's lessee, American Pile and Foundation, LLC ("American Pile"). Id. ¶¶ 5, 6, 29. ECA made full payment to Bauer for Bauer's losses associated with the Drill Rig rollover. Id. ¶ 32.

At the time of the rollover, ECA had an insurance policy in effect with Hartford entitled "Coverage Inland Marine Insurance Policy, Policy Number 13 UUN QY4040" (the "Policy"). Id. ¶ 2. The Policy insured ECA's leased property against certain enumerated damages or losses. Id. ¶ 26. On June 20, 2013, ECA submitted a claim to Hartford relative to the Drill Rig rollover. Id. ¶ 34. Hartford accepted coverage for the claim under the Policy. Id. ¶ 36. On September 29, 2014, Hartford agent Jay Becker ("Becker") informed ECA that the policy limit for the claim was $500,000. Id. ¶ 38. He also informed ECA that Hartford would cover ECA for 1/9 of the replacement cost value of the Drill Rig - $179,800 of the replacement cost value of $1,618,200. Id. ¶ 39. Becker cited a provision of the Policy which concerned "Other Insurance" coverage and coverage from Bauer and American Pile. Id. ¶¶ 40-41. ECA disputed Hartford's analysis of the "Other Insurance" provision and requested that Hartford apply the provision using the "equal shares" method. Id. ¶ 43. In February of 2015, Hartford agreed to use the "equal shares" method and thereby determined that it was responsible for 1/3 of the replacement cost value of the rig. Id. ¶¶ 48-49. However, Hartford further determined that because 1/3 of the replacement cost exceeded the policy limit of $500,000, it would pay only the $500,000 (minus the deductible), which it did by March 2015. Id. ¶ 50.

In June 2015, ECA's insurance broker had discussions with Hartford about reforming the applicable Policy limit from $500,000 to $2,000,000. Id. ¶ 53. On July 23, 2015, ECA contacted Becker about these discussions. Id. ¶ 69. ECA received interim status updates from Becker on Hartford's review of the policy limit in July and September of 2015. Id. ¶¶ 55, 57, 59, 61. On October 21, 2015, Becker informed ECA that Hartford had reformed and increased the Policy limit from $500,000 to $2,000,000. Id. ¶ 64. Becker further informed ECA that Hartford had revised and increased the replacement cost value of the Drill Rig to $1,745,129.63. Id. ¶ 65.

2

Hartford thus determined that its 1/3 share of the replacement cost value had increased to $581,709.88, and tendered payment to ECA in the amount of $81,709.88. Id. ¶ 67. Further discussions between Hartford and ECA ensued, but on December 21, 2015, Hartford informed ECA that it did not intend to revise its position on the application of the "Other Insurance" clause. Id. ¶ 71.

### 2. Procedural Background

ECA filed the First Amended Complaint on April 12, 2016. ECF No. 7. Therein, ECA brings three causes of action: (1) Count I, for a declaratory judgment that Hartford is obligated under the Policy to pay ECA the full amount of the replacement cost value of the Drill Rig; (2) Count II, for a declaratory judgment that the instant matter is not barred by the statute of limitations and/or that Hartford has waived, extended or is estopped from raising the suit limitation in the Policy; and (3) Count III, for breach of contract for failure to pay the full amount of the Drill Rig-related claim under the Policy. Id.

On April 26, 2016, Hartford filed the instant Motion to Dismiss and supporting Brief. ECF Nos. 13-14. ECA filed its Response to the Motion to Dismiss and Brief in Opposition on May 18, 2016. ECF Nos. 17-18. The Motion to Dismiss is now ripe for consideration.

### B. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Retirement System v. The Chubb Corp.,

3

39 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## C. DISCUSSION

Hartford moves for dismissal of ECA's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Specifically, Hartford argues that ECA's lawsuit is barred by the suit limitation provision expressly set forth in the Policy. The provision provides as follows:

4

### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

ECF No. 14-2 at 35-36.[1]

In applying the two-year suit limitation provision to the facts of the claims at issue, Hartford asserts that because ECA knew of the damage to the Drill Rig at least by June 20, 2013, the date it submitted its claim to Hartford, but did not bring this lawsuit until April 12, 2016, more than two years later, the lawsuit is time barred. ECF No. 14 at 7. In opposing the Motion to Dismiss, ECA does not dispute that the suit limitation provision is valid in Pennsylvania or that it is generally applicable to the rig-related claim; however, it asserts that: (1) it did not know of its "direct loss or damage" until Hartford increased the policy limit; and (2) "Hartford's representations, assurances and statements provided ECA with reasonable grounds to believe that it was within any applicable time limit and/or that the time limitation provision had been waived, extended or that such provision would not be strictly enforced." ECF No. 18 at 8-9.

### 1. Timing of ECA's Knowledge of Loss or Damage

#### a. No dispute at expiration of suit limitation period

ECA first asserts that because no dispute existed between ECA and Hartford during the two-year period following its June 2013 claim, there is no basis to dismiss the Amended

---

[1] The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Thus, without converting a motion to dismiss into a motion for summary judgment, a court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The policy is thus properly considered herein.

5

Complaint. ECF No. 18 at 8. ECA fails to support its argument with pertinent legal authority or policy language and it is therefore neither persuasive nor meritorious.

### b. ECA's knowledge of loss or damage

ECA also asserts that "it did not have knowledge of the 'direct loss or damage' that it sustained due to Hartford's failure to perform under the Policy until Hartford acknowledged its mistake and unilaterally increased the Policy limit." Id. at 8.[2] ECA further argues that "direct loss or damage" is not defined in the Policy and should be construed against Hartford as drafter of the Policy. Id. This argument is unavailing.

The phrase "loss or damage" is used no less than fifteen times in the relevant three-page section of the Policy entitled "Commercial Inland Marine Conditions," and each time, it is clear that the "loss or damage" referred to is to covered property. ECF No. 14-2 at 34-36. ECA obviously knew of the loss or damage to the Drill Rig, the covered property, at the time it submitted its claim for such loss/damage on June 20, 2013. ECA did not sustain damage or loss to its covered property through the actions or inactions of Hartford.

An argument similar to that advanced by ECA was recently rejected by the United States District Court for the Middle District of Pennsylvania. In Yatsonsky v. State Farm Fire & Cas. Co., Civ. A. No. 15-1777, 2016 U.S. Dist. LEXIS 55829 (M.D. Pa. April 27, 2016), the Court found that an insurance policy with a one-year suit limitation provision barred a suit filed more than one year after the insured's burst pipe caused damage to her home. It then addressed the plaintiff's argument to the contrary:

> Plaintiff counters that her complaint is not untimely, arguing that no loss occurred until after State Farm denied all of her claims. Because State Farm did not deny all of plaintiff's claims until after she filed this lawsuit, the date

---

[2] Plaintiff does not specify the date; however, the Amended Complaint indicates that it was October 21, 2015. ECF No. 7 ¶ 64.

6

of loss, according to plaintiff, actually occurred after this action began. Therefore, plaintiff asserts her breach of contract claim is timely.

Plaintiff cites no binding authority for this proposition, and our research has uncovered none. Indeed, Pennsylvania caselaw compels the opposite conclusion. The Pennsylvania Supreme Court has determined that the "date of loss" triggering the limitations period runs from the "inception of the loss." Gen. State Auth. v. Planet Ins. Co., 464 Pa. 162, 346 A.2d 265, 267-68 (Pa. 1975). Here, the inception of the loss, as stated in plaintiff's complaint, occurred on January 4, 2014, when a pipe burst inside plaintiff's home causing extensive damage. (Doc. 1-2, Compl. ¶ 6). The one-year suit limitation period, therefore, commenced on January 4, 2014. As such, plaintiff's contention that the one-year limitations period did not begin until after State Farm denied all of her claims lacks merit.

Yatsonsky, 2016 U.S. Dist. LEXIS 55829, * 7-8.

In the case at issue, ECA has failed to show that the suit limitation provision is inapplicable on these bases. Accordingly, ECA had knowledge of the "loss or damage" to the Drill Rig at the inception of the loss and certainly as of June 20, 2013 when it submitted the claim to Hartford.

### 2. Hartford's Ability to Enforce Suit Limitation Provision

#### a. Waiver

In opposing the Motion to Dismiss, ECA asserts that "Hartford, through Mr. Becker and his undisputed acts on multiple occasions, led ECA to believe that the time limitation provision (if applicable) was waived." ECF No. 18 at 10. ECA further argues that the "undisputed acts or language" of Hartford were inconsistent with its present position on the suit limitation provision. Id.

"Waiver is a voluntary and intentional abandonment or relinquishment of a known right." Samuel J. Marranca General Contracting Co. v. Americhar Cherry Hill Assoc. Ltd. Partnership, 610 A.2d 499, 501 (Pa. Super. 1992) (citation omitted). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to

7

stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." Id.

ECA offers citations to seven paragraphs in the First Amended Complaint as support for its assertion. ECF No. 18 at 10. Id. A review of those paragraphs reveals that therein, ECA makes allegations concerning Becker's communication with ECA during the period, beginning on July 23, 2015, in which Hartford was considering reforming the policy to increase the limit. Id. (citing ECF No. 7 ¶¶ 55, 57, 59, 61, 63-64, 70). These alleged "undisputed acts" are easily distinguishable from those found in the cases ECA cites in support of its waiver argument.

In Commonwealth v. Transamerica Ins. Co., 341 A.2d 74, 78 (Pa. 1975), which concerned the application of a contractual limitation similar to that at issue here, the Pennsylvania Supreme Court found that "the company by its actions had lulled the insured into neglecting the institution of suit within the required time." In McMeekin v. Prudential Ins. Co., 36 A.2d 430, 431-32 (Pa. 1944), the Pennsylvania Supreme Court found that the defendant insurance company's claim of abandonment had no merit where "the failure of the insured to proceed was due directly to the request of the company for indulgence and the company's representations that it was investigating the claim, the company itself was the cause of non performance on the part of the insured and it cannot prevent recovery on the ground of such non performance." In Marranca, 610 A.2d at 501, the Pennsylvania Superior Court found that the defendant could not contend that a contractual arbitration provision was mandatory after it had failed to file a petition to compel arbitration, failed to assert arbitration as an affirmative defense and had initiated other judicial proceedings in matters related to the contract.

Unlike the acts of waiver found in Transamerica and McMeekin, Hartford's "undisputed acts" cited by ECA could not have lulled ECA into inaction or caused nonperformance on its part

8

because the acts took place after the suit limitation time period had expired. Further, despite ECA's bald assertion to the contrary, unlike the defendant in Marranca, Hartford took no action inconsistent with its present contention that it did not waive the suit limitation provision.

The review that Hartford undertook in July 2015 concerned only the policy limit, not the application of the "Other Insurance" clause which is the basis of the instant lawsuit. The Court recognizes that the change in the Policy limit affected ECA's pecuniary interest in pursuing Hartford's application of the "Other Insurance" clause, but the change did not provide ECA with new grounds on which to do so. Thus, no waiver resulted therefrom.

### b. Estoppel

ECA additionally claims that Hartford should be estopped from raising the suit limitation provision. ECF No. 18 at 10-15. "Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 361 (Pa. 2000) (citation omitted). ECA baldly asserts that "Hartford's decision to review the Policy, after the then Policy limit had been paid and the alleged contractual time limitation had expired, extended any applicable time limitation. ... Because ECA reasonably believed that Hartford extended any applicable time limitation, Hartford should be estopped from raising [the] time limitation as a defense." ECF No. 18 at 14-15. As discussed above, Hartford's decision to review the Policy could not have induced ECA to take any action which allowed the suit limitation time limit to expire. Thus, that decision did not "extend" or otherwise expand the suit limitation time period.

Because the two-year suit limitation provision is applicable and began to run, at the latest, on June 20, 2013, this suit, filed on April 12, 2016, is barred. No action taken by Hartford in July 2015 or after operated to obviate the effectiveness of the suit limitation provision.

9

Accordingly, Hartford's Motion to Dismiss should be granted and the Amended Complaint should be dismissed with prejudice because amendment thereof would be futile.

### III. CONCLUSION

For the reasons set forth herein, it is respectfully recommended that the Motion to Dismiss filed by Hartford, ECF No. 13, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: October 26, 2016

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Joy Flowers Conti
Chief United States District Judge

All Counsel of Record via CM-ECF